CASE No. 939.

JONES v. MASSEY.

1. A was charged by a referee's report with the rental value of lands, and he excepted for that " he had been charged with rent of lands," but alleged no error in the amount of rents, or the mode of charging them. This report being confirmed by the Circuit Court, A appealed, alleging as error that his exception had been overruled. The Supreme Court directed that A should be required to account for the rents and profits of the land held by him, other than his own share, and set aside the decree of the Circuit Court, so far as it was inconsistent with their opinion. *Held* that A was not estopped, upon the principle of *res adjudicata,* from afterwards questioning this same amount of rents and the mode of charging them against him, adopted in the subsequent report of a referee.
2. A distinction recognized between *rents and profits* and *rental value.*
3. A tenant in common in possession of the land, who has committed no· ouster, is liable only for the rents received and the profits made upon so much of the tillable lands as he rented and cultivated in excess of his share.
4. A being entitled under a will to take all of the testatrix's lands at their appraised value, to be paid for in ten equal annual installments from the date of his election, made his election to take by way of exception to the

return of the commissioners in partition. The other legatees went into possession of their shares as allotted to them by this return and the return was confirmed by the Circuit Court, and the right of A to take the lands denied Upon appeal, the Circuit decree was reversed and the election allowed. *Held* that the election should date from the Circuit decree.

5. *Held further,* that the bond and mortgage to secure the sums to be paid for the land taken under such election, should not be enforced until the accounts between all the parties were adjusted.

6. *Held further,* that the rents due to A by the other parties for the time they were in possession under the return of the commissioners, should be credited on such bond of A.

7. One entitled to an undivided share of slaves, having them in his exclusive possession, is liable to account to the other joint owners for the profits derived by him from the use of the slaves.

8. One of several residuary legatees having received and used property, a part of the residuum, consumable in its use, is liable to account for the value derived by him from its use, over and above his share.

9. A matter not excepted to, embraced in a referee's report, which is confirmed by the Circuit Court, but upon appeal to the Supreme Court, is modified in other particulars, cannot be made a subject of exception in subsequent stages of the case.

10. Under an action for the division and settlement of an estate, one of the parties in interest cannot assert against his codistributees a claim for an illegal levy caused by them to be made upon his property.

Before WALLACE, J., Lancaster, October, 1879.

This case having been heretofore twice before this court, will be found reported in 7 *S. C.* 134, and 9 *S. C.* 376. After it was last sent back to the Circuit Court, the orders of reference mentioned in the opinion were made. The referee submitted his report, consisting almost wholly of a statement of accounts; but the items objected to and brought to the attention of the Circuit Court, are indicated by the exceptions taken thereto.

EXCEPTIONS OF JAMES R. MASSEY.—1. For that said referee has therein charged Dr. James R. Massey with the abstract annual rental value of the lands described in the pleadings, whereas the said referee should have allowed the said Massey to "account for the rents and profits" of the said lands received by him, other than his own proportionate share thereof, and should have charged him with the said rents and profits as aforesaid, and not with the annual rental value thereof.

2. For that said referee has taken into the accounting the

appraised value of that portion of the lands which James R. Massey elected to take under the will of his mother, Mrs. Elizabeth Massey, whereas said appraised value is in no way connected with the accounting for rentals and for personalty herein, and no authority to consider the same in connection therewith, is given by the orders of reference herein ; James R. Massey, under the decision of the Supreme Court herein, being entitled to ten years within which to pay to the parties entitled their proportionate share of said appraised value.

3. For that said referee has therein charged Dr. James R. Massey with interest on said appraised value of the lands, whereas Dr. James R. Massey should not have been charged with interest thereon.

4. For that said referee has failed to deduct from the total sum of the annual rentals above stated, the full proportionate share therein of Dr. J. R. Massey, having failed to deduct therefrom the $\frac{100}{1751}$st part thereof, whereas the said James R. Massey, if liable at all for the "rental value" of said lands, is only liable therefor according to the proportions stated in the conclusions of law contained in the report of W. M. Connors, Esq., referee, heretofore made, and is therefore entitled to credit for the $\frac{100}{1751}$st part thereof, as above stated.

5. For that said referee has calculated interest on the sum total of said rental value, whereas he should have charged interest only upon the $\frac{4453}{14008}$th part thereof; said James R. Massey if liable at all, being only liable for interest upon that portion thereof, in accordance with the conclusions of law in the report of Referee Connors before stated.

6. For that said referee has, in stating the accounts upon the rentals of the land, compounded the interest thereon against Dr. J. R. Massey, by computing the same to September 16th, 1879, then deducting credits, with interest computed to that date, which credits were not sufficient to over-balance the interest then due, and afterwards on the balance thus found, computing interest to September 16th, 1879, whereas he should have computed the interest on the annual rentals from the end of each year to September 16th, 1879, and the interest on the credits to the same date, and have then ascertained the balance at that date.

EXCEPTIONS BY OTHER LEGATEES TO REPORT OF REFEREE.

1. Because said referee has disregarded the decree of the Supreme Court and the orders of reference herein; and has opened up matters that were settled by the report of the former referee, and the orders of the Circuit and Supreme Court thereon. In this he has undertaken, without authority, to find that Dr. James R. Massey, in 1860, received personal property belonging to the estate of Elizabeth Massey, to the amount only of $75, and in 1864 to the amount of $100, the two items, with interest, aggregating $374. Whereas, the report of the former referees, W. M. Connors and Thomas H. Clyburne, show that he did receive personal property belonging to said estate, consisting principally of corn and other supplies, about January 1st, 1861, to the amount of $1156, with which he was charged, and interest thereon from January 1st, 1861, to September 16th, 1876. The former report in this particular was confirmed by the Circuit decree, and the Supreme Court decree in no way disturbed the same; and, certainly, the referee had no authority to ignore this item.

2. Because the said referee has erred in disregarding the former report in the particulars above stated, in disregarding all the testimony taken on this point by Referee W. M. Connors, Esq., and in refusing to charge James R. Massey with three-quarters of the said sum and interest, (he being entitled to one-quarter thereof,) especially as the decree of the Supreme Court does not disturb the same, but left it as adjudicated.

3. Because the orders of reference and the opinion of the Supreme Court directed said referee to charge Dr. James R. Massey with what he derived from the use of the slaves—and although the slaves were all in the use and employ of Dr. James R. Massey from about January 1st, A. D. 1861, to the time of their emancipation, yet the said referee concludes, in the face of a great mass of testimony, to the contrary, that Dr. James R. Massey derived no benefit from the use of the slaves, and charged him with nothing on this score; and in this it is submitted he erred.

4. Because he erred in allowing credit to Dr. James R. Massey for taxes for 1866, to wit, $36, and $17.64 interest thereon, which, he says in his report, was not noticed in the former report.

The order of reference did not authorize this; and the referee erred in allowing the same.

5. Because the referee erred in giving Dr. James R. Massey credit for $6750.30, an alleged guardianship account, when F. P. Ingrem had been, since 1861, the regularly appointed guardian of the said James R. Massey, in the room and stead of Elizabeth Massey, and the presumption is that the executor of Elizabeth Massey had already paid over this sum to the said F. P. Ingrem, guardian; especially in this case, when neither F. P. Ingrem nor his legal representative is a party to these proceedings.

6. Because the referee has erred in charging Elizabeth Beckham with $34.77; in charging Sarah Jones with the same sum; in charging J. R. Massey, Jr., and his two sisters, with the same sum; amounts alleged to be in the nature of damages for an alleged illegal levy of some cotton—matters which were improperly brought into the accounting, and which the accounting ordered between the parties did not embrace. These charges are wholly unwarranted by law and the orders of reference.

7. Because the referee has erred in charging in favor of Dr. James R. Massey against the other parties in interest, all the credits allowed to him in the former reports and decree thereon; and then in opening the charges made against him in the said reports and decree, thus acting contrary to equity and good conscience.

8. Because the referee has charged Elizabeth Beckham with improper charges and interest thereon, and all the others with too much interest.

9. Because he has failed to charge Dr. James R. Massey with the use of the negroes and interest thereon, as aforesaid, and also with the proper amount of interest on the other item.

Upon hearing the report of the referee and the exceptions thereto by the various parties, the Circuit Court made the following

### DECREE.

The report of D. A. Williams, Esq., special referee herein, was filed September 16th, 1879, and exceptions thereto, by the defendant, James R. Massey, were filed September 19th, 1879,

and by the plaintiffs and the other defendants September 23d, 1879.

The cause came on to be heard before this court at Lancaster, October 3d, 1879, upon these exceptions. The first exception by James R. Massey, the defendant, alleges as error in said report, that he is therein charged with the annual rental value of the lands described in the pleadings, whereas he should have been required to account for the rents and profits of the lands received by him other than his own proportionate share thereof, under the will of Mrs. Elizabeth Massey.

It is not denied that James R. Massey is a tenant in common with the other parties to this action, but it is claimed by them that the question as to whether he should be charged with the annual rental value of the lands or should account for the rents and profits, is *res adjudicata,* and cannot now be considered by this court. From an examination of the decree of the Circuit and Supreme Court herein, this court has come to a different conclusion. By the report of Referee Connors in this cause, filed October 3d, 1874, Dr. Massey was held liable for the rental value of the lands, but to that report exceptions were filed by him, alleging as error, among others, that he had been charged with "rent of lands belonging to said estate," and had been "adjudged chargeable with large balances of money upon said account."

This exception was overruled by the decree of the Circuit Court, made August 10th, 1876. James R. Massey appealed from said decree, and also from the Circuit order of October 24th, 1876, made in pursuance thereof upon the ground, amongst others, that the Circuit Court "erred in overruling said exceptions."

The question, upon the general exceptions above quoted, having thus been brought before the Supreme Court, it was held by a decision in this cause, filed March 21st, 1878, that James R. Massey should "account for the rents and profits of the lands other than his own share, down to the time of his election." The order of reference under which this report was made directed the present referee "to revise the reports of the former referee, so as to make the same conform to the decision of the Supreme Court,"

above mentioned. · The referee should have required James R. Massey to account for the rents and profits of the lands received by him, other than his own proportionate share thereof, down to the time of his election to take the same, and he erred in charging him with the annual rental value of said lands. The first exception by the defendant, James R. Massey, is therefore sustained.

The second and third exceptions, by said defendant, are also sustained, on the ground that the referee, in stating the accounts between the parties to this action, should not have taken into the accounts the appraised value of the lands which James R. Massey elected to take under his mother's will. The rights of the parties in this particular, under the decision of the Supreme Court in this cause, will be considered by the court hereafter in this decree.

The third exception is also sustained, upon the further ground that interest can only be charged upon the said appraised value from the date of the Circuit order of February 13th, 1874, overruling the exceptions to the return of commissioners to the writ in partition and confirming said return. This, however, becomes unimportant in view of the above determination as to the propriety of considering the appraised value in stating the accounts.

The fourth, fifth and sixth exceptions by the said defendants are also sustained upon the several grounds in said exceptions mentioned, but these being contingent upon the overruling of the first exception, and that exception having been sustained, are now of no practical importance to the defendant.

The first exception on the part of the plaintiff and the other defendants, (except James R. Massey), charges error in the report that the referee undertook to find the amount of personal property actually received by Dr. James R. Massey, whereas in report of Referee Connors he is charged with the estimated value of certain corn and other plantation supplies to a much larger amount, which report was confirmed by a decree of the Circuit Court. The second exception by the same parties is to the same effect.

It appears that James R. Massey excepted to the report of Referee Connors, on the ground that the referee had erroneously decided that he was " bound to account for the value of certain

slaves and *other property belonging* to the estate of Mrs. Elizabeth Massey, deceased," and this exception came before the Supreme Court on appeal from the Circuit decree overruling it.

The Supreme Court say, in concluding this decision, " the decree of the Circuit Court and the reports of referees must be set aside, so far as they are inconsistent with the conclusions already stated, and the cause must be remanded for the further proceedings conformable to this decree."

An examination of that decision shows, and this court holds, that the charge against James R. Massey, for corn and other personalty left on the plantation, unless it was used by James R. Massey for his individual benefit, is " inconsistent with the conclusions" stated in said decision. It is therein expressly held that the slaves and other personalty left by Mrs. Elizabeth Massey, "should have been kept together by the executor until partition could have been had," and that "the retaining of slaves upon the land cannot be made ground for holding James R. Massey to a measure of liability different from that fixed by the will."

It follows from these principles, that the mere fact that certain corn and other plantation supplies were left upon the land at the death of Mrs. Elizabeth Massey, is no ground for charging James R. Massey for the value of such supplies.

It is proper that he should be charged with so much thereof as was used for his individual benefit over and above his own proportionate share thereof.

With this explanation of the views of the court upon this question, the first and second exceptions are overruled. The third exception refers to the hire of the slaves. The referee has found that Dr. James R. Massey derived no benefit from the use of the slaves from January 1st, 1861, up to their emancipation. And this exception was filed to the report of the referee because he charged the said James R. Massey with nothing at all on that account. This exception will be sustained so far as to have this matter referred back to the referee for further inquiry, and report as to what the value of the services of the said slaves, for the time designated, would have been worth, under the control of a farmer or planter of average skill and diligence. The liability of Massey, therefore, is to be determined after a full report from the referee.

The fourth exception on the part of the same parties, alleges error in a credit allowed in said report, to Dr. James R. Massey, for certain taxes and interests thereon, which was not included in former reports, and (it is claimed) was not authorized by the orders of reference herein. One of these orders expressly directs the referee to allow James R. Massey, upon the accounts, all credits allowed by the report of former referees, as well as "such other credits as may appear to be proper." The credit for taxes appears to be proper. This exception is therefore overruled. The fifth exception by these parties as to error in the referee in allowing to the defendant, James R. Massey, credit for the guardianship account against the estate of Mrs. Elizabeth Massey, cannot be considered. This credit was allowed in the report of Referee Connors, above mentioned, and no exception thereto was taken. If there was error in so allowing the credit, it should have been noticed by an exception before the confirmation of that report. It is now too late to make the question, and the exception must be overruled. In addition to the reasons just given, it may be added that one of the orders of reference expressly directs this referee to allow to James R. Massey all the credits allowed by the former reports, thus recognizing the fact that no question as to the propriety of these credits could now be made.

The sixth exception charges error in the report in this: That Elizabeth Beckham, Sarah Jones, and James R. Massey, Jr., are each charged with $34.77, as damages caused to defendant, James R. Massey, by an alleged illegal levy made in this case. In this there was error; the referee should not have undertaken to estimate the damages caused by an illegal levy. The sixth exception is therefore sustained. The seventh exception by same parties is a general exception, and has, in effect, already been considered. The seventh exception is overruled. The eighth and ninth exceptions as to error in charges of interest, must be overruled. No such error has been shown to this court. The other question raised by the ninth exception has already been considered in one of the exceptions above. The eighth and ninth exceptions are overruled. It is ordered that it be referred back to D. A. Williams, Esq., special referee, to revise his report in this cause, so as to make the same conform to the conclusions herein stated.

It is further ordered that said referee do inquire and report how much of the lands of Mrs. Elizabeth Massey's estate the said Dr. James R. Massey worked and cultivated each year from January 1st, 1861, down to the day of his election to take the whole lands; what the same were worth each year, under the control and management of a farmer of good ordinary skill and industry, and what the rents and profits of the same other than his own share, were worth for the time specified.

It is furthermore ordered that the referee do inquire and report the names and number of slaves belonging to the estate of Elizabeth Massey, that were under the control, and in the employ of Dr. James R. Massey, or his guardian, from January 1st, 1861, down to the time of their emancipation, and what the value of their services would have been worth for that period, in the hands and control of a farmer of average skill, industry, and perseverance; what they could have been hired for, and what benefit the said James R. Massey has derived from their use, so that the court that has to determine this question, may be enlightened on the facts bearing upon the points suggested. All the testimony heretofore taken by the former referees, and any further testimony that may be desired, may be used by the referee and the court in reaching a conclusion on all the points. Upon the hearing of this cause, a motion was made on behalf of the defendant, James R. Massey, for an order that so much of the return of the commissioners to the writ in partition, dated December 1st, 1873, as relates to their appraisal of the land therein mentioned and described, be confirmed, and that, upon the execution by James R. Massey, of his bond secured by a mortgage of the eleven hundred and sixty-six acres of land (which he elected to take under Mrs. Elizabeth Massey's will) to the clerk of this court, conditioned for the payment of three-eighths of the appraised value of the whole lands, (exclusive of the one hundred acres and the mills) to wit, for the payment of $2623.50 in ten equal annual installments, with interest from date hereof, to be restored by the sheriff of Lancaster county to the full possession of the whole of said lands. But this court is of the opinion that a proper construction of the decision of the Supreme Court upon this point, as filed March 15th, 1876, fixes the date at which the

ten years, credit to James R. Massey should commence, at the date of the Circuit order, confirming the return of the commissioners to the writ in partition, and overruling the exceptions to that return, namely, February 13th, 1874. This appears from that decision where it is said (7 *S. C.* 141) James R. Massey was clearly entitled to take the lands at their appraised value, and was not bound to make his election until the value of the lands was ascertained by the confirmation of the return of the commissioners.

It was proper that he should be required to give his bond and mortgage, for the payment of the principal, in annual installments, and interest upon it from the date of the judgment.

It is therefore ordered that so much of the return of the commissioners to the writ in partition dated December 1st, 1873, as relates to the appraisal of the land therein mentioned and described be confirmed, and that upon the execution of James R. Massey of his bonds, secured by a mortgage of the eleven hundred and sixty-six acres of land, which he elected to take under the will, to the clerk of this court, conditioned for the payment of three-eighths of the appraised value of the whole lands, exclusive of the mills and the one hundred acres, to wit, for the payment of $2623.50, in ten equal annual installments, with interest from February 13th, 1874, he be restored by the sheriff of Lancaster county to the full possession of the whole of said lands. It appearing to the court that upon the coming in of the report of referee upon the revised accounts between the parties to this action, some or all of the other parties will probably be indebted to James R. Massey to a greater or less amount, and it also appearing that great loss, injury and wrong might result to the defendant, James R. Massey, by a suit upon the bond herein required, prior to the coming in of said reports, on motion of Ernest Moore, attorney for the defendant, James R. Massey, it is ordered that the clerk of this court, and all the parties to this action, be enjoined from assigning, transferring or suing upon said bond, or foreclosing said mortgage for any installment due thereon until the coming in of the report upon the reference to revise the accounts herein ordered, and until the final and complete adjudication of the issues upon the accounts between the parties to this action. It is further ordered that, upon the coming in of said report, such balance upon the accounts as may be found due by any of the

other parties to the defendant, James R. Massey, be credited upon the interest or share of each of said parties, respectively, in said bond and be considered to that extent a payment upon the said bond.

Exceptions to this decree were duly served and filed, and notice of appeal therefrom was duly given, on behalf of the defendant, James R. Massey, and of the plaintiff and the other defendants.

The grounds of appeal are numerous and lengthy; the points decided are sufficiently indicated in the opinion.

*Mr. Ernest Moore*, for J. R. Massey.

*Messrs. Allison & Connors*, contra.

November 22d, 1880.   The opinion of the court was delivered by

McGowan, A. J.   Elizabeth Massey died in 1858, leaving a large estate, real and personal. She had one son, James R. Massey, two daughters, Elizabeth Beckham and Sarah Jones, and three grandchildren, children of a deceased daughter Jane, viz., Mary E. Massey, Charlotte A. Beckham and James R. Massey, Jr.   The deceased left a will, of which Dixon Barnes was executor, and after his death, his executor, Daniel W. Brown, by which she devised and bequeathed to her son, James R. Massey, the mills on the Catawba river, and a hundred acres of land adjoining, one-half of the remainder of her real estate, and also some personal property, horses, stock, library, silver cup, &c. Besides the foregoing exclusively to James R., she directed the residue of her estate to be divided into four equal parts, one-fourth to her said son, James R.; the same to Churchill B. Jones, in trust for his wife, Sarah; the same to Elizabeth Beckham, and the same to be divided among the children of Jane.   The testatrix named the negroes that were to be allotted to the different parties in the division; and to her son, James R., she gave the right of election to take all of the real estate at valuation on the partition and division of the same.

In 1861 the shares were valued by certain persons, called together for that purpose by Dixon Barnes, the executor, and placed in the possession of the parties to whom they were given. But, for some reason, there was no effort to partition the real estate, which was left in the possession of James R. Massey, who remained at the homestead until 1871, when this action was commenced by C. B. Jones, trustee, against James R. Massey for partition and account of the rents and profits of the lands, &c., including an account of D. W. Brown, then executor, and a settlement of the estate of Elizabeth Massey. No objection was made. Writ of partition was issued to lay off to James R. Massey the mills and a hundred acres, and to divide the remainder of the land among the parties according to the will. The commissioners made return laying off mill and lands for James R., and recommending that the remainder of the land be divided according to the interest of the respective parties. James R. Massey objected to the return and *declared his election* to take the whole land at valuation. Judge Mackey confirmed the return and ordered it executed *February* 23d, 1874. James R. Massey appealed to the Supreme Court, which held that " he was entitled to take the land at appraisement," and that he " should be required to account for the rents and profits of the lands held by him other than his own share down to the time of his election." * * * " The judgment must be set aside and the case remanded to carry out the requirements of the judgment." *Jones* v. *Massey*, 7 *S. C.* 142.

Before the above appeal upon the subject of election the matters of account had been referred, and W. M. Connors, Esq., was appointed special referee, who made a report affirming the consent partition of slaves, and charging James R. Massey with the *yearly rental value* of all the lands from 1861 to 1873, which, with interest, amounted in the aggregate to $13,748.20 ; that there were articles of personal property, not willed, to the value of $1256, consisting principally of corn and provisions, and that there was due to James R. Massey from the estate of the testatrix, on account of guardianship, $3114, &c. To this report James R. Massey excepted. In May, 1876, Judge Mackey overruled the exceptions and confirmed the report. From his order James R. Massey again appealed to this court, which (March

21st, 1878), rendered a judgment reversing the Circuit order confirming the consent partition of slaves, and directing that James R. Massey " should be charged with *whatever value he has derived from the use of the slaves,* prior to the emancipation, over and above the proportion of such value he was entitled to under the will, on the same ground upon which he was required by the judgment of this court to account for the rents and profits of the lands. The decree of the Circuit Court and the reports of the referee must be set aside as far as they are inconsistent with the conclusion already stated, and the same remanded for further proceedings comformable to this decision." *Jones* v. *Massey,* 9 *S. C.* 391.

The case went back a second time. May 20th, 1878, Judge Mackey, at Chambers, granted an order appointing D. A. Williams, referee, and directed him to " revise " the former reports and make a report conformable to the judgment of the Supreme Court. March 7th, 1879, Judge Pressley presiding, at Lancaster, made an order appointing the same referee, and directing the parties in possession of the land to account to James R. Massey. [It does not appear, but we suppose these parties had been put into possession under the writ of partition before that part of it was set aside.] Exceptions were filed to the order of Judge Mackey by James R. Massey, and to that of Judge Pressley by Jones et al. Referee Williams, under both orders, made a report, which, amongst other things, *transferred into his own report so much of the report of Connors as charged James R. Massey with the rental of the lands, bringing the interest down to September 16th, 1876, and making the aggregate of* $22,742.87. To this report both sides filed exceptions, which were argued before Judge Wallace, from whose decree the appeal comes to this court.

We shall not consider as distinct the exceptions taken to the orders of May, 1878, and March, 1879. So far as they were orders of reference to carry out the second judgment of this court they were merely administrative and not final. The same referee was appointed by both orders. He made his report under both, and in considering the exceptions to that report and the decree based upon it, all exceptions previously taken to the orders may come under review. The exceptions to the report and the decree

are numerous—made by both parties—and to prevent confusion we shall not take them up *seriatim* but according to the subject matter.

The most important question in the case is as to the principle of the accounting of James R. Massey for occupation of the lands between the death of his mother and the time he became sole owner by election. This subject is made somewhat complicated by the claim that it is *res adjudicata.* Connor's report, made before the second judgment of this court, charged James R. Massey with the rental value of the land and interest for fifteen years, as if he were a stranger, and this on action for use and occupation. Judge Mackey confirmed that report, and it is. claimed, although the second appeal was from that decree, and it was set aside, so far as inconsistent with the conclusion therein stated, *that the particular part of the report and decree which had reference to the account for rent was not reversed because it was not appealed from and was not inconsistent with the judgment of the Supreme Court.* The allegation is that Judge Wallace had no right to consider that part of the report of the referee, Williams, for the reason that Williams merely transferred it and incorporated it into his report from that of Connors, where it had been confirmed by Judge Mackey and not appealed from, and, therefore, was *res adjudicata.*

We have looked carefully through the record of this case back to the original complaint and answer. We find that James R. Massey did except to the report of Connors *as to rents,* and did appeal from the order confirming it. To the report he excepted, "that he had been charged with rent of lands belonging to the estate," and to the order confirming the report, upon the ground, among others, "that the court erred in overruling said exception." *Jones* v. *Massey,* 9 *S. C.* 382, 386. That, it is said, was a general appeal as to all rents and not as to the difference between "rents and profits" and "rental value." That is true; but the whole includes all its parts. It is said that point was not argued. It may be that upon that appeal the weight of the argument was directed to the point of accountability for the slaves; but whether the matter of the land rent was argued or not, it was in the record, and this court ruled upon it, repeating almost the same

words as the former judgment. [See quotation from that judgment hereinbefore made.] The decree and the reports of the referee were set aside, "so far as they are inconsistent with the conclusion herein stated." Under these circumstances we cannot accept the view that the item for the rental value, in the report of Connors, was finally adjudged by the Circuit decree of 1876, on the ground that it was not appealed from; that Referee Williams had the right to transfer it to his report, and that Judge Wallace had no right to consider it, because it had been adjudged. We agree with him that the matter was not adjudged, and that the charge as to rents was "inconsistent" with the judgment of the Supreme Court and vacated.

If we were not reluctant to shut off inquiry we would hold that the proper principle of the accounting had been adjudged by this court to be for "rents and profits," and not for "rental value." This court, in both of its judgments pronounced by the same judge, so expressed its view in words, and, in the last, particularly declared that the account for the slaves and the land should stand "on the same grounds." But the precise difference between "rents and profits" and rental value," had not been argued before this court, and as we are inclined to the opinion that the words "rents and profits" in the judgments, were used in their general sense, we entertain that point now as for the first time before this court.

The question then being open, what principle should govern in stating the account of James R. Massey for use and occupation of the lands up to the time he took them by election? Upon the death of Mrs. Elizabeth Massey the title to these lands devised rested in the respective devisees, subject, of course, to all just claims against the testatrix. They stood to each other as tenants in common in unequal interests. Each had the same right to occupy his proportion of the land. James R. Massey had the largest interest, and, in common with the others, he had the right to be there. One tenant in common cannot maintain a possessory action against his co-tenant except for an actual ouster. If James R. Massey had ousted the other co-tenants, and kept them out by force, which is not alleged, then he would have been liable as a trespasser for the rental value beyond his

share. But as it is not alleged that he kept the other tenants out of the possession of their respective parts, they were in default in not occupying or claiming partition, and he is liable for the rents and profits which he received from the lands beyond his own share, just as he was held to account for whatever value he "derived from the use of the slaves over and above the portion of such value he was entitled to under the will." *Jones* v. *Massey,* 9 *S. C.* 376; *Valentine* v. *Johnson,* 1 *Hill's Ch.* 49; *Lyles* v. *Lyles, Id.* 86.

We cannot suppose that the application of this principle to the case will work any injustice. From 1861 to 1874 the country was in an unsettled state. For a portion of that period James · R. Massey was a minor; for a large portion war was raging, and he was absent in the service of the Confederate States; and after military operations ceased the labor of the country was disorganized, affecting injuriously the income from lands. We note that James R. Massey states in his answer "that so far from having received any profit from said plantation for which he should account, the possession of the same entailed upon him great loss." But be that as it may, the rule as to the accountability between tenants in common is established, and is nowhere better expressed than by an elementary writer of high standing, (Adams), who says: "In addition to the decree for a partition, the court may, also, if either of the co-owners has been in the exclusive reception of the rents, decree an account of his receipts. But the mere fact of his having occupied the property will not, of itself, make him liable for an occupation rent, for the effect of such a rule would be that one tenant in common, by keeping out of the actual occupation of the premises, might convert the other into his bailiff, and prevent him from occupying them, except upon the terms of paying rent." *Adams' Eq.* 233.

We concur with the Circuit judge as to the principle upon which the accounting should be stated, but it seems to us that his orders of reference embrace more than his ruling required. We cannot see that it is necessary or that it will promote progress in this long litigation to order an inquiry—outside of the rights of the parties—as to "what the same lands were worth each year under the control and management of a farmer of good

ordinary skill and industry." According to the foregoing principles, the relation of the parties does not authorize them to hold James R. Massey responsible for bad husbandry, or to require him to make good any deficiency which may have arisen from his not being "a farmer of good ordinary skill and industry." He was not a lessee for value, but part owner. His possession was not tortious but permissive, and might have been ended at any moment by the parties claiming their own. The accounting should be conducted as follows: Ascertain whether James R. Massey cultivated more of the tillable land than his proportion before election. If not, then there is nothing due by him. If he did, then he should be charged with the rents and profits of that excess; that is to say, if he rented the land he should be charged with the rents received; and if he cultivated them himself, then with the profits actually received from such cultivation, without regard to the skill which he happened to possess as a farmer or his habits as to industry.

As to the time when the bond for the land should bear date and put in motion the credit of ten years, it cannot be as contended when the commissioners in partition made their return, for if there was no other reason that return never recommended election, but ignored it. In this respect the case is not analogous to that of *Huson* v. *Wallace*, 1 *Rich. Eq.* 6, in which the parties were in possession *under the return* that was afterwards, *nunc pro tunc*, confirmed. Here the exact reverse is the case— the possession was held in opposition to the right of election. The bond should bear date when the election was consummated. At that moment the relative rights of the parties changed. Massey became the owner of the lands and the account against him as tenant in common must cease. He never indicated his election until after the return of the commissioners had been made, December, 1873. To that return he excepted and *declared his election*. His exceptions were overruled. The return was confirmed and ordered to be enforced February, 1874. That order was reversed by judgment of this court, (1876), which *allowed the election*. It should have received legal sanction in the order of February, 1874, but it was refused, and, pending the appeal, he was denied the rights incident to it. When must he be consid-

ered to have elected? When the Circuit order was passed which should have decreed it, or when he realized the fruits of it? We concur with the Circuit judge that the election must be considered to have been legally made at *the date of the Circuit order.* It is true his enjoyment was postponed until after the judgment of the Supreme Court, but that judgment did not create the right, it only declared error in the Circuit order, and it must be referred back and read for that order. The judgment itself indicates this view, for it says that James R. Massey should give his bond and mortgage "for the principal in annual installments, with interest upon it from the *date of the judgment.*" This may operate hardly on Massey, but what has been done cannot be undone; all that can be done is to put the parties, as nearly as possible, in the condition in which a correct judgment would have placed them at that time. The right of Massey attached at the date of the Circuit order, so as to give him from that time an account of rents from those in possession of the lands, and he must be held to the corresponding obligation of arranging the purchase money by giving the bond and mortgage at that date. What is the proper date of that order? The first order of Judge Mackey was rescinded and replaced by another. In the first report of the case, (7 *S. C.* 139), the date is given as *February* 23*d,* 1874, but in the decree of Judge Wallace it is referred to as *February* 13*th.* We conclude that this is a mistake, and that the proper date is *February* 23*d,* 1874, and that fixes the time for the date of the bond and mortgage from which the credit of ten years began to run.

We see no objection to the temporary injunction against "foreclosing said mortgage for any installment due thereon until the coming in of the report and the adjudication upon the accounts between the parties." It is manifest that some of the parties will be indebted to James R. Massey in some amounts growing out of this litigation. They have cross equities, which, as far as they go, should be set off one against the other. This cannot be done with certainty unless the parties are kept *in statu quo* until their rights are determined. There seems to be propriety in it, for the reason that James R. Massey is required to give bond for the purchase money of lands two years before his right was

declared to the lands so purchased, and the possession of which was held by those who are entitled to receive the purchase money secured by the bond. The rents for these lands during the very years in which the interest was running and the installments falling due, most certainly should be credited on the bond.

In regard to the slaves, this court, after argument, directed in what manner the account should be stated. Under that direction the referee reported " that under the decision of the Supreme Court in this cause, James R. Massey should account for whatever value he derived from the use of the slaves and not for their hiring value, and, accordingly, reports from the testimony that James R. Massey derived no benefit from the use of the slaves over and above their expenses." The Circuit judge referred it back to report " what the value of their services would have been in the hands and control of a person of average skill, industry and perseverance. What they would have hired for," &c. In the view which we expressed as to the rents and profits of the lands, we think this reference was unnecessary and would only increase the expenses and cause further delay in the case. The principle of the account for the possession of the slaves was settled by this court in its second judgment, and we can do no more than re-affirm it in the words there stated. " It is proper that he [James R. Massey] should be charged with whatever value he has derived from the use of the slaves prior to emancipation, over and above the proportion of such value he was entitled to under the will, on the same ground upon which he was required by the judgment of this court to account for the rents and profits of the lands." The evidence is not before us upon which the referee based his report, and we can pronounce no judgment thereon.

We concur with the Circuit judge in reference to the account for corn, plantation supplies, &c., alleged to have been on the place at the death of Mrs. Massey. That property, not specifically disposed of, like the slaves, fell under the residue clause of the will. The report of Referee Connors upon the subject of this property, was excepted to in the words " slaves and *other property*." The matter was before the Supreme Court in the exception for error " in overruling said exceptions." The same prin-

ciple of accountability, which was expressly declared as to the slaves, should be applied to this property, which, in its nature, was consumable in the use.

We also concur with the judge in refusing to disturb the report of the referee in regard to the guardianship claim against the estate of Mrs. Massey. That was a distinct claim by James R. Massey, having no connection with the points argued, and the objection now made for the first time comes too late. And we concur in refusing to allow the charge against Elizabeth Beckham, Sarah Jones and James R. Massey, Jr., *for damages* caused, as alleged, by an illegal levy upon the property of James R. Massey. This claim was properly disallowed.

Subject to the modifications herein made, the decree is affirmed and the appeals dismissed.

McIVER, A. J., concurred.