### FITZPATRICK v. WYLIE.

1. LIMITATION OF ESTATES.—Under a will devising to J. one tract of land, one-half of the remainder and one-fourth of the remaining one-half, for life with remainder over, and divising the remaining three-fourths of the one-half of remainder to A. B. C. and D. for life, with remainder over, but giving J. right "to take the said real estate and require that the said lands be vested in him at the appraised value of said lands and real estate—this is, however, discretionary with my said son J., and he can act to suit himself, when called upon to decide and make his election." When J. takes the lands at this appraised value and accounts for the value of three-eighths of the whole lands, he takes in the one-half of the remainder and in the one-fourth of the remaining one-half a life estate, and in the other part a fee simple.

2. REHEARING refused, but opinion modified.

Before KLUGH, J., Lancaster, May 30, 1906.    Modified.

Action by Thomas M. Fitzpatrick and John H. Fitzpatrick against W. Gill Wylie, Bessie McInnis and Susan Melton. From Circuit decree, all parties appeal.

*Mr. Ernest Moore,* for plaintiff, cites, *in support of his contention that James R. Massey took a fee simple in the lands, the adjudications in Jones* v. *Massey,* 7 S. C., 134; 9 S. C., 376; 14 S. C., 292.

*Messrs. J. E. McDonald* and *R. B. Allison,* for defendant Wylie, *who is in like interest with plaintiff, make same citations.*

*Messrs. R. E. Wylie* and *Green & Hines,* for defendants McInnis and Melton. The former cites: *There is nothing in Jones* v. *Massey,* 7 S. C., 134; 9 S. C., 376; 14 S. C., 292, *giving James Massey a fee simple title to the lands.* The latter: *No adjudication of the rights of James in Jones* v. *Massey,* 7 S. C. and 14 S. C., *can affect the rights of McInnis and Melton:* 19 S. C., 157; 21 Ency., 1 ed., 129.

This opinion was filed January 10, but remittitur held up on petition for rehearing until

March 8, 1907. The opinion of the Court was delivered by

MR. ERNEST GARY, Circuit Judge, acting Associate Justice, in place of MR. JUSTICE JONES, disqualified.

On the 11th day of May, 1905, the defendant, W. Gill Wylie, obtained from the plaintiffs, Thos. M. and John H. Fitzpatrick, a written option, whereby the plaintiffs, upon the consideration therein stated, agreed that said defendant should have the exclusive right and privilege to purchase a certain tract of land on the Catawba River, known as the "Massey Tract," at and for the sum of ten dollars per acre, at any time prior to the second day of July, 1905. The

260

acreage of said tract to be determined by a survey to be thereafter made or agreed upon.

On the 23d day of June, 1905, the defendant, W. Gill Wylie, notified said plaintiffs in writing of his election to take said lands under the terms of the said option, and of his readiness and ability to pay the purchase money for the same, upon receipt of a proper deed of conveyance for said premises.

In compliance with said demand, the plaintiffs prepared and executed a deed conveying said premises in accordance with the terms of said option, and tendered the same to the agent and attorney of said defendant, Wylie, for approval and acceptance, and thereupon demanded the purchase price agreed upon in said option.

On the 31st day of July, 1905, the said defendant, W. Gill Wylie, through his attorney, refused to accept said deed and declined to pay the purchase price of said land, alleging as a reason for such refusal that there existed a cloud upon the plaintiff's title to said lands.

On the 9th of August, subsequent thereto, the plaintiff brought the present action, setting out substantially the above facts and alleging that the deed so tendered was good and valid, and demanding judgment that the defendant perform said agreement and that he be required to accept the deed so tendered.

The defendant, Wylie, answered plaintiff's complaint, admitting the option, and signified his willingness and readiness at all times since the 23d of June, 1905, to purchase the said tract of land in accordance with the provisions of said option, if he could be assured that the said plaintiffs are seized of a title in fee simple of said premises and can convey the same free from all liens, incumbrances or adverse claims.

The defendant, Wylie, further alleged that it was necessary for the Court to construe the will of Elizabeth Massey in order to determine whether the plaintiffs are seized in fee of the premises described in said option. The answer

further alleged, on information and belief, that the conflicting claims between the plaintiffs and the children of James R. Massey can only be determined by the Court upon certain meager records in the case of *Jones* v. *Massey,* and must depend very largely upon parol evidence, and that defendant would sustain serious and irreparable injury should he be required to comply with the terms of his contract to purchase the said land before the conflicting claim between the plaintiffs and the children of James R. Massey can be determined by this Court, inasmuch as the defendant would be in danger of being deprived of the benefit of such parol evidence by the death of the persons upon whose knowledge alone he could depend for proof of the facts in the premises.

The children of James R. Massey were made parties to the action, who answered, alleging: "That under the terms of the will of Elizabeth Massey, deceased, they, as the only surviving children of James R. Massey, will, upon the death of said James R. Massey, take the fee simple title to all of the lands described in paragraph one of the complaint, their father, James R. Massey, having taken under said will only a life estate in said lands. That the plaintiffs herein, as grantees of said James R. Massey, now own only the life estate of the said James R. Massey in said lands, and, therefore, can sell and convey to the defendant, W. Gill Wylie, no greater estate."

Upon the issues made by the pleadings, an order of reference was granted, and, upon the filing of his report, the cause was heard by Judge Klugh, who filed a decree in the cause, holding that the plaintiffs, Thos M. and John H. Fitzpatrick, had an estate in fee simple in only three-eighths of the land in question, and an estate during the lifetime of James R. Massey in five-eighths of said land. That they were, therefore, unable to convey a fee simple title to the whole of said lands in accordance with the terms of their contract, and denied their prayer for specific performance, and dismissed the complaint.

From this decree both plaintiffs and defendants have appealed to this Court.

At the hearing, the appeals were heard separately; in considering the same, however, it is not considered necessary to act on each separately, as the whole subject can be disposed of in this opinion.

The question involved in both appeals is, whether the plaintiffs have a fee simple title to the land in question, and, in order to determine this issue, it will be necessary not only to construe the will of Elizabeth Massey, who at the time of her death is conceded to have had a good and absolute title to the same, but also the former appeals in *Jones* v. *Massey*.

The deed conveying said premises to the plaintiffs is not in "Case," but an extract from the same shows that on the 5th of December, 1892, D. A. Williams, as clerk of Court, executed a deed conveying said land to the plaintiffs absolutely under foreclosure of a mortgage thereon executed by James R. Massey.

The provisions of said will bearing upon this controversy are as follows:

"First. I give, devise and bequeath to my son, James R. Massey, for and during his natural lifetime, subject to the limitations and conditions hereinafter stated, my mills, situate on the Catawba River, with one hundred acres of land around the said mills, to be laid off in such way and manner as will be suitable and proper with reference to the mills and the balance of my real estate; also the one-half of the balance or remainder of my whole real estate and lands whereon I now reside and cultivate, situate on the Catawba River, composed of several tracts or parcels, for and during the term of his natural life, subject to the limitations and conditions hereinafter stated; also all my horses and mules (except my two carriage mules), all my stock of cattle, plantation, smith and carpenter tools, the one-half of my stock of hogs; also my library of books and my silver cup, which was the cup of his father.

"The foregoing lands and estate my son, James R. Massey, will take and receive, in addition to what will hereafter in this will be given, and over and above the share which he will hereafter in this will receive and be given to him in common with his sisters. James R. Massey (my son) will get under this clause, and in this devise, the mill and one hundred acres land, and then the one-half of all the balance or remainder of my whole real estate, subject to the conditions and limitations hereafter in this will stated and expressed; also the other property, personal, herein stated, for which he is not to account, and over and above his share hereafter given him.

"Third. All the balance, remainder and residue of my estate, real and personal, saving and excepting what is disposed of in the first and second clauses of my will aforesaid, I give, devise and bequeath as follows: To my daughter, Elizabeth Massey, the one-fourth; to my daughter, Sarah Jones, the one-fourth; to my son, James R. Massey, the one-fourth; and to my grand-children, Mary E., Charlotte A., and James R. Massey, among them the remaining one-fourth. In the division and partition of the same, I allow the negroes to be laid off and allotted and vested as follows: To James R. Massey, my son, the following negroes: Tom (the miller), Cindy, Isom, John (carpenter), Tim, Jim, Henrietta and child, Rhoda, Clayborne, Miram, and their future increase—my son, James R., to take said negroes at their appraised value and account for said negroes at their appraised value in the division to my other legatees; he accounting to the other three for the excess over his one-fourth. To my daughter, Elizabeth Massey, the following negroes: Robin, Silvey, Jimmy and Daniel, and future increase, at their appraised value on the partition and division—she accounting for their value in taking her one-fourth as aforesaid. To my grand-daughter, Mary Elizabeth Massey, the following negroes: Nancy, Jane, Jack, Bill and Jessie, and their future increase at their appraised value on the partition and division—she accounting for said value

in taking her share, the one-third of one-fourth as aforesaid. To my grand-daughter, Charlotte A. Massey, the following negroes: Eaton, Rachel, Kitty and Rosella, at their appraised value on the partition and division of my estate—she accounting for said value in taking her share, the one-third of one-fourth as aforesaid. I have herein allotted my negroes. To my daughter, Sarah Jones, and grandson, James R. Massey, I have allotted no negroes, but they will receive their share of the value of said negroes from the others. Sarah Jones will receive her one-fourth in money, and James R. Massey his one-third of one-fourth also in money.

"On the partition and division of the lands and real estate my son, James R. Massey, is to have the right, and the power is hereby conferred on him, to take the said real estate and require that the said lands be vested in him at their appraised value on said partition—he accounting for the appraised value of said lands and real estate. This is, however, discretionary with my said son, James R. Massey, and he can act to suit himself when called upon to decide and make his election. If my son, James R. Massey, should decide to take the lands on the partition at their appraised value, this, with the value of the negroes, will far exceed his one-fourth and put him considerably in debt, having to pay back largely; but he must have a long credit, say ten years, if he should desire it, with interest from the day the partition is made, in equal annual installments. The estate share and negroes given to my daughter, Elizabeth Massey, under this section or clause of my will is given and bequeathed to Dixon Barnes, in trust for her sole and separate use for life, and at her death to such child or children as she my said daughter Elizabeth may leave living at her death, and in the event she dies leaving no child or children alive, or the issue of a child, then the share which my said daughter Elizabeth takes and the estate which she gets for life under this will is to return back and be divided among my other legatees named in this third section or clause of

my will, according to their rights and in the proportion herein stated and expressed in this third section.

"The share which my daughter Sarah Jones will receive and take under this my will and this third section thereof is given and bequeathed to her for life for her sole and separate use, and at her death to be equally divided among her children and the children of my deceased daughter, Charlotte—the children taking *per capita*—the said share to pass into the hands of Churchill B. Jones in trust, and as trustee for the trust herein stated for my daughter Sarah.

"The share which my grand-daughter Mary Elizabeth and Charlotte Antoinette Massey, and the estate and negroes which they will respectively get, receive, take and be entitled to under this my will and this the third section thereof is given, devised and bequeathed to Dixon Barnes, in trust, for the sole and separate use of the said Mary Elizabeth and Charlotte A. Massey respectively during their respective lifetimes and at their deaths respectively, to such child or children as they may leave living at their respective deaths, and in the event either or both dies leaving no child or children alive, or issue of a child, then their share, estate and negroes is to be divided between the survivor and their brother, James R. Massey; if both die leaving no child, or issue of a child, James R. Massey, their brother, takes the share of both. The share which my grand-son, James R. Massey, takes and will be entitled to receive under this my will and the third section thereof is given to him for life and at his death to such child or children as he may leave alive at his death, and if he dies leaving no child or children alive at his death, or the issue of a child his share and estate under this my will and the third section thereof is to be divided between his sister Mary E. and Charlotte A. Massey.

"The mills and one hundred acres of land and the one-half of the balance or remainder of land and real estate given and devised to my son James R. Massey in the first section or clause of my will together with the negroes and estate

which my said son James R. Massey will get, receive and be entitled to under this the third section or clause of this my will, is hereby given, devised and bequeathed to my said son James R. Massey for and during the term of his natural life, and at his death to such child or children as he may leave living at the time of his death, and in the event he my said son James R. Massey should die, leaving no child or the issue of a child at his death, then said lands, mills, negroes and estate is to return back and be divided amongst my legatees, named in this the third section of my will and according to their rights and in the proportions herein, in this third section of my will, stated and expressed."

It was conceded in the argument that the title to the mill tract containing one hundred acres was not involved in this controversy. It will be seen that by the terms of the will of Elizabeth Massey, that James R. Massey was given 1 the right, at his election, to purchase at an appraised value, which right and option it is clearly shown he exercised, and has fully accounted to the other beneficiaries under said will, for such lands as he elected to purchase under the terms of the same. And just here is where the difficulties have arisen. The plaintiff contending that James Massey elected to take *all of said lands* exclusive of the mill tract, and thereby became the owner of the same, while, on the other hand, the deefndants, Bessie McInnis and Susan Melton, contend that James R. Massey only took a life estate in the same, and under the terms of said will, at his death, they will take the fee simple title.

So it will be readily seen that the issue depends upon the title of James R. Massey.

The plaintiffs' attorneys have urged with much force that the previous adjudication in the case of *Jones* v. *Massey,* reported in 7, 9 and 14 S. C., have settled the question, that James R. Massey has acquired a fee simple title to said lands, and that the same is now *res judicata.* The question then is, how and when did James R. Massey acquire his title? We answer, to 485 acres of said tract he took a life

estate directly from the will of Elizabeth Massey. And to
the remaining 1,166 acres he acquired a fee simple title by
his exercising his right of election under the terms of said
will. On the 1st day of December, 1873, the commissioners
appointed to appraise said lands in case of *Jones* v. *Massey,*
made return as follows:

"To the Honorable, the Circuit Judge:

"The undersigned commissioners, after first being duly
sworn to act fairly and impartially, respectfully report the
following return as made in accordance with the instructions
contained in the last order made at Chester on the fifth day
of September, 1873.

"We have first laid off to James R. Massey one hundred
acres around the mill as directed, represented by plat here-
with filed, marked for convenient reference Plat No. 5.

"We have then in pursuance to said order appraised the
whole balance of the said lands consisting of sixteen hun-
dred and fifty-one acres, at the sum of six thousand nine
hundred and ninety-six dollars ($6,996).

"We have then laid off to James R. Massey, four hundred
and eighty-five acres, which we have appraised at the sum
of three thousand four hundred and ninety-eight dollars,
including the improvements thereon. This includes all the
buildings (except two small houses), nearly all fencing; and
may be said to include all the improvements on the whole
land of any value. This tract does not include the mill and
one hundred acres above set apart to the said James R. Mas-
sey.

"Plat No. 1, in the return of the commissioners filed 1st
January, 1872, by the clerk of the Court for Chester County,
represents the land so laid off to the said James R. Massey.
See said return and the plat thereof.

"Tract No. 2, designated by Plat No. 2, in the aforesaid
return, we have appraised at thirteen hundred and sixty
dollars, and recommend that same at said valuation be
vested in Mrs. Sarah Jones, under the will of her mother,
Mrs. Elizabeth Massey.

"Tract No. 3, designated by Plat No. 3, in said return, containing four hundred and sixty-six acres, we have appraised at thirteen hundred and ninety-eight dollars, and herein recommend that the same at said valuation be vested in James R. Massey, Jr., Mary E. Massey and C. A. Beckham, share and share alike under the said will.

"Tract No. 4, designated in said return by Plat No. 4, containing two hundred and forty-eight acres, we have appraised at the sum of seven hundred and forty-four dollars, and recommend that the same be vested, at said valuation, in Mrs. Elizabeth Beckham, wife of William H. Beckham.

"We believe that these lands have been fairly divided and appraised with an eye to the interest of all the parties in interest.

"And as to the one-fourth of the one-half of the whole tract (not including the mill tract of one hundred acres), by the will of the testatrix given to James R. Massey, it is recommended that the said Sarah Jones, Charlotte A. Beckham, Mary E. Massey and James R. Massey, Jr., do pay in lieu thereof to the said James R. Massey his one-fourth share in money at the appraised valuation of the tract of land, to wit: the sum of eight hundred and seventy-four dollars and fifty cents, for which they shall give their bond or bonds, due in two equal annual installments with a mortgage or mortgages of the land herein assigned to said Sarah Jones, Charlotte A. Beckham, Mary E. Massey and James R. Massey, Jr. And also that the same parties, Sarah Jones, Charlotte A. Beckham, Mary E. Massey and James R. Massey, Jr., do pay to Mrs. Elizabeth Beckham, wife of W. H. Beckham, the sum of one hundred and thirty dollars and fifty cents, being the deficit in value of the share allotted to her. Given under our hands and seals the first day of December, A. D. 1873.

(Signed)        A. Carter, (L. s.)
                A. McIlwain, (L. s.)
                F. D. Green. (L. s.)

"The plats attached to this section show entire lands of Elizabeth Massey (exclusive of mills and 100 acres around same), consisted of 1,651 acres, divided into four tracts of 485, 452, 466 and 248 acres, in which tracts is included the lands here in question."

To this return, James R. Massey filed an exception, as follows:

"Because in their said return, they have withheld from this defendant the right to elect whether he would take the whole of the said lands and real estate conferred upon him in the third clause of said will, at their appraised valuation thereof, upon the terms and conditions contained in said third clause, which said lands this defendant would have so elected to take and still elects to take in conformity with the right conferred upon him as aforesaid."

In passing upon this exception, the Circuit Judge (Mackey) made the following ruling: "It appearing that the defendant, James R. Massey, has been in the possession of all of said real estate since 1859, it would be impossible that this Court should now permit him to purchase the whole of said land at a credit of ten years, as provided by the terms of the will of the testatrix, unless the said James R. Massey do pay to the other parties interested in such real estate the rents and profits of their share of such real estate for the past fifteen years, and shall give a bond with two good sureties, besides a mortgage of the real estate so to be purchased by the said defendant, for the payment of the purchase money thereof, and the interest on the 1st day of January of each year." 7 S. C., 139.

On appeal from this order (7 S. C., 134, 141), the Supreme Court said: "James R. Massey was clearly entitled to take the lands at the appraised value, and was not bound to make his election until the value of the land was ascertained by the *confirmation* of the return of the commissioners."

The judgment of the Circuit Court was set aside, and the cause remanded to carry out the requirements of the judgment of the Supreme Court.

In the second appeal of the case of *Jones* v. *Massey,* 9 S. C., 376, 388, in construing this clause of said will, the Supreme Court announces its conclusion as follows: "It follows that, to conform the intent of the testatrix, all the estate not required for the payment of debts, and not specifically devised, should have been kept together by the executor until partition could be made, and at that time the various provisions of the will, as to such residue should have been carried into effect. This would embrace the slaves and that portion or interest in the land not devised to James R., and upon such partition the appraisal of the slave property should be made for the purpose of equalizing the slaves; and, in the event that James R. should elect to take the whole land, an appraisal of its value should be made and the terms and conditions of the credit to James R. for the amount due by such appraisal, provided he demanded such credit, should be ascertained."

The cause was again remanded for further proceeding. The cause again came up before this Court at the April Term, 1880, on appeal from a decree of Judge Wallace. An extract from the Circuit decree in this last case, 14 S. C., 292, 298, shows that James R. Massey was not charged for rents of land received by him under the will of Elizabeth Massey, the language being: "The referee should have required James R. Massey to account for the rents and profits of the lands received by him, *other than his own proportionate share* thereof (italics mine), down to the time of his election to take the same, and he erred in charging him with the annual rental value of said lands. The first exception by the defendant, James R. Massey, is, therefore, sustained. The second and third exceptions by said defendant are also sustained, on the ground that the referee, in stating the accounts between the parties to this action, *should not have taken into the accounts the appraised value of the lands which James R. Massey elected to take under his mother's will* (italics mine). The rights of the parties in this particular, under the decision of the Supreme Court in this

cause, will be considered by the Court hereafter in this decree."

After considering other exceptions, the Circuit decree finally concludes (page 301) : "Upon the hearing of this cause, a motion was made on behalf of the defendant, James R. Massey, for an order that so much of the return of the commissioners to the writ in partition, dated December 1st, 1873, as relates to their appraisal of the land therein mentioned and described, be confirmed, and that upon the execution by James R. Massey, of his bond secured by a mortgage of the eleven hundred and sixty-six acres of land (which he elected to take under Mrs. Elizabeth Massey's will), to the clerk of this Court, conditioned for the payment of three-eighths of the appraised value of the whole lands (exclusive of the one hundred acres and the mills), to wit: for the payment of $2,623.50 in ten equal annual installments, with interest from date hereof, to be restored by the sheriff of Lancaster County in the full possession of the whole of said lands * * * It is, therefore, ordered, that so much of the return of the commissioners to the writ in partition, dated December 1st, 1873, as relates to the appraisal of the land therein mentioned and described, be confirmed, and that upon the execution of (by) James R. Massey of his bond secured by a mortgage of eleven hundred and sixty acres of land, which he elected to take under the will, to the clerk of this Court, conditioned for the payment of three-eighths of the appraised value of the whole lands, exclusive of the mills and one hundred acres, to wit: for the payment of $2,623.50, in ten equal annual installments, with interest from February 13th, 1874, he be restored by the sheriff of Lancaster County to the full possession of the whole of said lands."

On appeal to the Supreme Court (*Jones* v. *Massey,* 14 S. C., 310), this conclusion of Judge Wallace was sustained. That Court holding that the proper date from which Massey's rights were to begin was February 23, 1874, and that date fixes the time for the date of the bond and mortgage.

What rights did he acquire under this proceeding? Upon his executing the bond and mortgage described in Judge. Wallace's order, he became the owner in fee of the eleven hundred and sixty acres of land, incumbered by a bond and mortgage of $2,623.50. At folio 175 of "Case," it is shown that the plats attached to this section show that the entire lands of Elizabeth Massey (exclusive of mills and one hundred acres), consisted of 1,651 acres, divided into four tracts of 485, 452, 466 and 248 acres, in which tracts is included the lands here in question.

The tract containing 485 acres the said James Massey has elected to take directly under the will, the remaining tracts he has elected to take by purchase under the option or privilege allowed him.

As to the eleven hundred and sixty-six acres, he has, or had, upon the execution of the bond and mortgage mentioned in the Circuit decree of Judge Wallace, a fee simple title, for the reason that he purchased those tracts and has accounted for the same.

As to the tract of 485 acres, he has only a life estate, because he accepted that as a specific devise under the will. By the terms of which, the mills and one hundred acres and also the one-half of the balance of the "whole real estate and lands" of Elizabeth Massey, and also his one-fourth of the residue was devised to him for life, with remainder to his children, and in the event that he should die having no child, or the issue of a child, then with remainder over. As above stated, James R. Massey is still alive, and the defendants, Bessie McInnis and Susan Melton, are his children. James R. Massey could convey to the plaintiff only his life estate in the said 485 acres.

It appears from the written agreement to purchase, the acreage was not stated, but was to be determined afterwards by a survey to be agreed upon.

The complaint, therefore, should not have been dismissed in view of the allegations of defendant, Wylie's, answer, that he was desirous to comply, if plaintiffs could make him

a good title.  He should have the privilege of purchasing the eleven hundred and sixty-six acres, if he so desires, and the Circuit decree should be so modified.

It is the judgment of this Court, that the judgment of the Circuit Court be modified in the particulars hereinbefore mentioned.

March 8, 1907.  PER CURIAM.  In consideration of the petition for rehearing in this case we have carefully reviewed the entire record and the arguments of counsel, and have reached the conclusion that the judgment of this Court should be modified, by holding that James R. Massey took a life estate not only in the tract of four hundred and eighty-five acres, as held in the decree, but also in one-fourth of the tract of eleven hundred and sixty-six acres.  Notwithstanding the intricacy of the cause, growing out of the prolonged and confused litigation and the loss of portions of the record, this result is capable of demonstration and the Court announces its conclusion without requiring reargument.

Under the will of his mother, all of the interest directly devised to James R. Massey in the entire tract of sixteen hundred and fifty-one acres, was a life interest with remainder to his children.  This life interest was, (1) one-half of the whole, (2) one-fourth of the remainder.  But the will provided: "On the partition and division of the lands and real estate my son, James R. Massey, is to have the right, and the power is hereby conferred on him, to take the said real estate and require that the said lands be vested in him at their appraised value on said partition—he accounting for the appraised value of said lands and real estate—this is, however, discretionary with my said son, James R. Massey, and he can act to suit himself, when called upon to decide and make his election.  If my son, James R. Massey, should decide to take the lands on the partition at their appraised value, this with the value of the negroes, will far exceed his one-fourth, and put him con-

18—76

siderably in debt, having to pay back largely, but he must have a long credit, say ten years, if he should desire it, with interest from the day the partition is made, in equal annual installments."

The commissioners in partition appointed by the Court made this division and valuation: Value of entire 1,651 acres, $6,996.00; value of 485 acres assigned to J. R. Massey, as one-half for life, $3,498.00; leaving 1,166 acres valued at $3,498.00.

This eleven hundred and sixty-six acres was divisible between James R. Massey and the other devisees, James R. Massey being entitled to one-fourth for life. But as directed by the clause of the will above quoted, the Court allowed James R. Massey to take the entire eleven hundred and sixty-six acres at the appraised value of thirty-four hundred and ninety-eight dollars, requiring him to secure to the other divisees their shares by bond and mortgage. *Jones* v. *Massey,* 14 S. C., 310. The amount paid or secured to be paid under this order by the Court to the other divisees was three-fourths of thirty-four hundred, ninety-eight dollars, equal to twenty-six hundred and twenty-three and 50-100 dollars. This was the full appraised value of the fee simple in the three-fourths which Massey was required to pay, and it is clear, the Court intended for him to have that which he was required to pay for, namely, a fee simple. But in as much as he took the remaining one-fourth of the eleven hundred and sixty-six acres under a direct devise of a life estate therein to him, he was not required to pay for it. There is nothing whatever in the record to indicate even an attempt or purpose of the Court to transmute his life estate in the one-fourth of the eleven hundred and sixty-six acres into a fee simple. On the contrary, the fact that the Court did not require Massey to pay or secure to the contingent remaindermen the value of the remainder in the one-fourth, after the determination of his life estate, clearly indicates the purpose of the Court not to enlarge or in any way inter-

fere with the life estate of James R. Massey as to the one-fourth of this tract of eleven hundred and sixty-six acres.

The judgment of this Court, therefore, is, that James R. Massey took, in the partition under the will, a life estate in the tract of four hundred and eighty-five acres and in an undivided one-fourth of the tract of eleven hundred and sixty-six acres; and a fee simple title in an undivided three-fourths interest in the tract of eleven hundred and sixty-six acres subject to the mortgage in favor of the other divisees; and the decree heretofore filed is modified to the extent that the defendant, W. Gill Wylie, may have the privilege of purchasing three-fourths of the eleven hundred and sixty-six acres subject to the mortgage, if he so desires.